IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHYRA TAYLOR,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF OMAHA, NEBRASKA; COUNTY OF DOUGLAS; MARISA BOYCE and NATHANIEL BARNHILL, in their individual and official capacities,<br><br>  Defendants. | 8:25CV11<br><br>**MEMORANDUM AND ORDER** |

Then-plaintiff Mandrell L. Swiney, Jr. ("Swiney") originally filed this action on January 10, 2025, bringing various claims under Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 against the city of Omaha (the "city"); Douglas County, Nebraska (the "county"); and Omaha Police Department Detective Marisa Boyce ("Boyce"), in her individual and official capacities. Swiney then amended the complaint (Filing No. 38) to include claims against Deputy Douglas County Attorney Nathaniel Barnhill ("Barnhill"), in his individual and official capacities (collectively, the "defendants"). After Swiney's passing, the magistrate judge granted the motion to substitute Swiney's wife and the personal representative of his estate, Shyra Taylor ("Taylor"), as a party in interest under Federal Rule of Civil Procedure 25 (Filing No. 67).

This matter is now before the Court because Boyce, in her official capacity, and the city (together, the "city defendants") have moved to dismiss some of the claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Filing Nos. 49, 50).[1] The county and Barnhill (together, the "county defendants") have also moved to dismiss under Rule 12(b)(6) and additionally argue Barnhill is entitled to absolute

---

[1]Though Boyce is also sued in her individual capacity, the city defendants' motion only mentions the official-capacity claims.

prosecutorial immunity or qualified immunity (Filing Nos. 53, 54). Taylor has responded (Filing Nos. 56, 57) and the defendants have replied (Filing Nos. 58, 59). For the reasons explained below, the defendants' respective motions to dismiss are granted.

I.   BACKGROUND[2]

   A.   The Sexual-Assault Investigation and Arrest

Taylor's claims all center around an allegedly deficient police investigation into a sexual-assault case and the government's alleged withholding of evidence during the preliminary stages of the criminal case that followed.

In February 2021, a minor child ("J.B."), told her Child Protective Services ("CPS") case worker that Swiney had raped her "in various locations" in Omaha, Nebraska when J.B. was between nine and ten years old. J.B. underwent a forensic interview at Project Harmony (the "forensic interview") and Boyce was assigned to investigate the allegations.

In June 2022, more than a year after the initial report, Boyce interviewed J.B. in person at the Douglas County Youth Center. Taylor alleges that during this interview Boyce "expressed sympathy" for J.B. Boyce also conducted telephone interviews with J.B.'s mother, paternal grandmother, and maternal aunt. Another detective interviewed J.B.'s twin brothers. Those interviews did not corroborate J.B.'s claims. To the contrary, Taylor alleges J.B.'s maternal aunt told Boyce that J.B. was "very devious" and would "make up accusations."

On November 2, 2023, Boyce signed an affidavit seeking an arrest warrant (the "affidavit"), and Barnhill signed a felony complaint alleging Swiney committed "two counts of first[-]degree sexual assault on a child on or about March 18, 2016 through May 10, 2017" while J.B. lived at a North 33rd Street residence (the "residence") with her

---

[2]The facts are taken from Taylor's amended complaint (Filing No. 38). The Court accepts the well-pleaded factual allegations as true, granting all reasonable inferences to Taylor. *See Ark. Times LP v. Waldrip as Tr. of Univ. of Ark. Bd. of Trs.*, 37 F.4th 1386, 1391 (8th Cir. 2022).

mother. Taylor argues the fact that J.B.'s family members did not corroborate her accusations should have been included in the arrest affidavit. In Taylor's opinion, that would have cut against a finding of probable cause. Taylor also takes issue with the fact that Boyce's affidavit referenced other child-welfare records related to J.B. (but unrelated to J.B.'s rape allegations) and claims Boyce only cited to those records to impermissibly "bolster probable cause."

On March 24, 2024, Swiney was arrested on the felony warrant and placed in Douglas County Correctional Center in Omaha, Nebraska. At Swiney's May 6, 2024 preliminary hearing in county court, Boyce testified that the alleged rapes took place at the residence between 2016 and 2017. The county court found probable cause to bind the matter over to the Douglas County District Court for trial.

### B.     Alleged Pre-trial Issues

On July 22, 2024, two days before another pre-trial hearing, Swiney's defense counsel emailed Barnhill requesting "CPS intakes" and the "Child Abuse and Neglect" report from March 28, 2012, referenced in Boyce's affidavit. Barnhill replied that defense counsel "should have all the reports" he has.

On July 24, 2024, the Douglas County District Court held a pre-trial hearing. Defense counsel asked Barnhill to provide a criminal history and custody records for Swiney from 2016 to 2017; medical records for J.B.; and the child-welfare records mentioned in Boyce's affidavit. Barnhill denied those requests because the child-welfare records were confidential and the 2016-2017 criminal case involving Swiney was sealed.

On August 28, 2024, the Douglas County District Court granted defense counsel's motion for J.B.'s mental-health and medical records identified in her forensic interview over Barnhill's objection. Taylor claims Barnhill "claimed ignorance regarding J.B.'s mental health care, therapy, and medical care" and "made no attempt to inquire or identify mental health care providers." In Taylor's view, Barnhill's failure to quickly acquiesce to

these pre-trial requests constitutes a violation under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

On October 2, 2024, the Douglas County District Court judge presiding over Swiney's "plea in abatement" "found probable cause based on Detective Boyce's testimony during the preliminary hearing."  Defense counsel then moved to quash the information because Douglas County Corrections records "proved [Swiney] was in custody from November 16, 2015, through March 28, 2016," and again for a separate sexual-assault offense between October 8, 2016 and April 21, 2017.  Defense counsel also presented an eviction notice for the residence filed on April 6, 2016.  As Taylor sees it, these records shorten the timeframe Swiney could have raped J.B, from fourteen months to only eight days.[3]  Rather than quash the information, however, the Douglas County District Court granted Barnhill leave to amend the timeline to March 29, 2016, through April 6, 2016.

That same month, Swiney's defense counsel subpoenaed the Nebraska Department of Health and Human Services ("DHHS") for J.B.'s child-welfare records.  DHHS only produced the originating intake form from February 11, 2021—"none of the documents relied upon by Detective Boyce" in the affidavit.

Defense counsel then moved for hearing under *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978) (holding that a criminal defendant is entitled to a hearing if they show a warrant affidavit contains a false statement made with reckless disregard for the truth which is material to establishing probable cause).  That hearing was scheduled for November 8,

---

[3]Taylor does not clarify whether the residence was immediately evacuated upon the filing of the eviction notice, nor how this obviates probable cause when J.B. alleged Swiney raped her in "multiple locations" "on or about" March 18, 2016, through May 10, 2017.

4

2024. The morning before the hearing, however, Barnhill dismissed the charges against Swiney.

### C. The Lawsuit

Taylor then brought this action under § 1983, alleging that the defendants' violated Swiney's rights under the United States Constitution. Specifically, Taylor claims violations of Swiney's Fourth Amendment rights against unreasonable search and seizure and malicious prosecution; the Sixth Amendment right to counsel; and the Fifth and Fourteenth Amendment rights to due process and a fair trial. Taylor further alleges that the defendants failed to promptly disclose "*Brady/Giglio* material"[4] and conspired to "abridge [Swiney's] constitutional rights."

## II. DISCUSSION

First, the defendants all argue, and Taylor does not dispute, that the claims against Boyce and Barnhill in their official capacities are duplicative of the claims against their employers. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Next, they argue that Taylor's amended complaint only offers legal conclusions insufficient to state a claim for municipal liability under § 1983 (Filing No. 50). *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). And finally, the county defendants argue Barnhill is entitled to absolute or qualified immunity.

---

[4]Taylor repeatedly references the withholding of "*Brady/Giglio* material." *Brady v. Maryland* and *Giglio v. United States* protect the accused's right to a fair trial by requiring disclosure of exculpatory evidence. *See Brady*, 373 U.S. at 87; *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). But there can be no violation of Swiney's fair-trial rights where there was no trial. *See United States v. Jeanpierre*, 636 F.3d 416, 422 (8th Cir. 2011) ("*Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial." (quoting *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005))); *Evans v. Janing*, 489 F.2d 470, 474 (8th Cir. 1973) ("[T]he duty of disclosure enunciated in *Brady v. Maryland* is designed to assure the fundamental *right to a fair trial* rather than penalize law enforcement officers for conduct encroaching upon an accused's constitutional rights." (emphasis added)).

5

### A. Standard of Review

As an initial matter, Federal Rule of Civil Procedure 8 requires a pleading to contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Taylor's pleading is neither short nor plain. It is over 200 paragraphs long and includes many details that do not appear to relate to any claim. Furthermore, every new section "incorporates the foregoing paragraphs by reference" and appears to bring every conceivable claim against every conceivable defendant. Such shotgun pleading "imposes a heavy burden on the trial court, for it must sift each count for the allegations that pertain to the cause of action purportedly stated and, in the process, disregard the allegations that only pertain to the incorporated counts." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires "more than a sheer possibility that [the defendants have] acted unlawfully" or "a mere possibility of misconduct." *Id.* at 678-79. Taylor must set forth more than mere legal conclusions and a formal recitation of the elements of her causes of action. *See Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B. Municipal Liability against the City

Section 1983 "provides a cause of action for the deprivation of constitutional rights by persons acting under color of state law." *Torres v. Madrid*, 592 U.S. 306, 310 (2021). It is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Municipalities and local governing bodies are liable under § 1983 only if a "policy or custom caused a plaintiff to be deprived of a federal right." *See Alexander v. Hedback*, 718 F.3d 762, 766 (8th Cir. 2013) (citing *Canton v. Harris*, 489 U.S. 378, 385 (1989)).

There are several avenues a plaintiff may use to show municipal liability. *See Leftwich ex rel. Leftwich v. Cnty. of Dakota*, 9 F.4th 966, 972 (8th Cir. 2021). Municipal entities like the city and county "may be liable under § 1983 for constitutional violations if a violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Id.* Taylor attempts to plead all of them.

### 1. Official Policy

"Official policy involves 'a deliberate choice to follow a course of action made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A ex rel. Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). State law determines which officials make policy. *Id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)).

Taylor argues Boyce acted in accordance with the city's official policies which directly violated Swiney's constitutional rights, but she never identifies the requisite official policy that is the "moving force behind the alleged violation[s.]" *See Calgaro v. St. Louis Cnty.*, 919 F.3d 1054, 1058 (8th Cir. 2019). She pleads only conclusory allegations that Boyce's actions (and inaction) stem from the city's "official policies." She accuses the city of "compartmentaliz[ing] information/evidence in [its] possession to establish plausible deniability in the investigation and the prosecution." These conclusory assertions that Boyce's actions are based on a policy are insufficient to state a *Monell* claim. *See id.*

7

### 2. Unofficial Custom

Taylor also alleges the city's "inadequate customs" caused "the violations of [Swiney's] constitutional rights" and that those "inadequate procedures" were "ratified by" the city. The city counters, and the Court agrees, that this allegation does not even include a "threadbare recital" of the elements of an unofficial-custom claim under *Monell*. *See Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

To base *Monell* liability on an unofficial custom or practice, Taylor must plead "a pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect and force of law." *Jane Doe A*, 901 F.2d at 646 (quoting *Monell*, 436 U.S. at 691). Apart from paying lip service to the phrase "pattern of violations," Taylor has not shown a pattern of underlying constitutional violations. Taylor's *Monell* claim is only based on harm to Sweeney.

While "multiple incidents involving a single plaintiff could establish a 'custom' if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials," *Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 829 (8th Cir. 2013), Taylor has not pleaded that the city's policymaking officials were on notice of the issues complained of nor that the issues involving Sweeney were so persistent "as to have the effect and force of law," *see Jane Doe A*, 901 F.2d at 646.

### 3. Failure to Train, Supervise, or Hire

For the city to be liable under a theory that it failed to train or supervise its employees, the failure "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (alteration in original) (quoting *Canton*, 489 U.S. at 388). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). Again, Taylor merely

points to alleged violations by Boyce and concludes the city "failed to train, supervise, or discipline officers." Taylor's issues with the handling of Swiney's criminal case are not sufficient to plead a "pattern" of "deliberate indifference" with the city's training or supervision. *See id.*

Finally, Taylor's claim that the city is deliberately indifferent in hiring and retaining "officers who are unqualified for their employment positions" also fails. Imposing *Monell* liability based on a hiring decision requires an "exacting test." *Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019) (citing *Brown*, 520 U.S. at 410). Taylor does not point to anything in Boyce's background as an applicant which is "nearing identical to the type of officer misconduct that caused the constitutional deprivation allegedly suffered by [Swiney]." *Morris v. Crawford Cnty.*, 299 F.3d 919, 923 (8th Cir. 2002).

In reply, Taylor claims she "need not specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss," *see Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004), and that the city can be held liable under § 1983 for a "single unconstitutional act," *see Pembaur*, 475 U.S. at 480. This argument is without merit. Like the plaintiff in *Crumpley-Patterson*, Taylor's complaint "is not deficient because she failed to incorporate language specifically alleging the 'existence of an unconstitutional policy or custom.'" 388 F.3d at 591 (quoting *Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). Rather, Taylor's complaint is deficient because it "fail[s] to include *any* 'allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom[.]'" *Id.* (emphasis added).

Furthermore, Taylor misstates the Supreme Court's holding in *Pembaur*. In that case, the Court emphasized that "not every decision by municipal officers automatically subjects the city to § 1983 liability." *Pembaur*, 475 U.S. at 481. For the city to be liable under *Monell* due to a single act, it must be an act of an official with "final policymaking authority" pursuant to state law. *Id.* at 483. Taylor presents no arguments that Boyce

9

possesses final policy-making authority for the city under Nebraska state law. Therefore, the Court will dismiss Taylor's claims against the city.

### C. Municipal Liability against the County

Taylor's *Monell* claim against Douglas County fares no better. Taylor fails to plead a *Monell* claim against the county for the same reasons she fails to plead one against the city—she repeatedly points to alleged conduct in Swiney's case and summarily concludes the conduct stems from county policy or custom. To add to the confusion, she frequently attributes the same conduct to both the county and the city.[5] Because the factual allegations in Taylor's amended complaint only reference conduct in Swiney's criminal case, not official policy or custom, dismissal is warranted. *See Ulrich v. Pope*, 715 F.3d 1054, 1061 (8th Cir. 2013) (upholding the dismissal of a § 1983 claim where the plaintiff pointed to no facts to support his *Monell* claim "other than the example of his own arrest and detention").

### D. Barnhill in his Individual Capacity

Taylor also sues Barnhill in his individual capacity and accuses him of maliciously prosecuting Swiney; "conspir[ing]" with Boyce "to deprive [Swiney] of his constitutional rights"; "engaging in an inadequate [] prosecution"; not "inquir[ing] or identify[ing] mental health care providers" for J.B.; "deliberately ignor[ing]" the timeframe of when Swiney was in custody as it relates to when he could have raped J.B.; not interviewing "material witnesses" Taylor believes Barnhill should have interviewed; and failing to "investigate, question, verify, review and vet the evidence" against Swiney "before bringing charges[.]" Barnhill contends he is entitled to absolute immunity because Taylor "describes only

---

[5]Taylor's responses to the city (Filing No. 56) and county (Filing No. 57) regarding the *Monell* claims are nearly identical and she attributes the same conduct to both. For example, Taylor states in both responses, "The OPD and the DCAO have a policy, custom, practice or culture, whether written or otherwise, of treating suspects as second-class citizens compared to victims" and "The OPD and the DCAO are engaging in a system of filtering evidence from investigators and lacking any transparency."

prosecutorial functions intimately associated with the judicial phase of [Swiney's] criminal prosecution." *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). The Court agrees.

Whether Barnhill receives absolute prosecutorial immunity "depends on the functional nature of the activities" not "[Barnhill's] status as a prosecutor[.]" *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987), *abrogated on other grounds* (quoting *Imbler*, 424 U.S. at 430). A prosecutor is absolutely immune "from liability under § 1983 for [his] conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process[.]'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler*, 424 U.S. at 430-31) (internal citation omitted). "Where an official's challenged actions are protected by absolute immunity, dismissal under Rule 12(b)(6) is appropriate." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016).

Because absolute prosecutorial immunity attaches to the function, it "'is not defeated by allegations of malice, vindictiveness, or self-interest,' and applies even if the prosecutor's steps to initiate a prosecution are patently improper." *Id.* at 916 (quoting *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 580 (8th Cir. 2006) (internal citation omitted). Thus, Taylor's allegations that Barnhill "conspired" or acted "callously" are immaterial to the absolute immunity analysis. *See id.*; *see also Reasonover*, 569 F.3d at 580 (noting a prosecutor is "absolutely immune from a civil conspiracy charge when his alleged participation in the conspiracy consists of otherwise immune acts"). "Even if [Barnhill] knowingly presented false, misleading, or perjured testimony, or even if he withheld or suppressed exculpatory evidence, he is absolutely immune from suit" under § 1983. *Reasonover*, 447 F.3d at 580; *accord Myers*, 810 F.2d at 1446 (stating that "allegations of abusive, illegal or unethical conduct" by a prosecutor "must fail if they represent an attempt to impose damages liability for acts encompassed in the initiation or conduct of adversarial proceedings").

In reply, Taylor doubles down on her accusations that Barnhill "had a hand in the malicious prosecution" and "manufactured facts." This argument is unavailing. *See Imbler*, 424 U.S. at 428 (explaining that absolute immunity extends to suits for malicious prosecution); *Myers*, 810 F.2d at 1446 (noting that absolute immunity protects the decision to file charges "even in the face of accusations of: vindictive prosecution; or reckless prosecution without adequate investigation; or prosecution without jurisdiction (even if with malice); or conspiracy to prosecute for a crime that never occurred" (internal citations omitted)).

Finally, Taylor argues Barnhill is not entitled to absolute immunity because his actions occurred "prior to the prosecution." But prosecutors are also entitled to absolute immunity before charges are brought. *See Burns*, 500 U.S. at 490, 492 (explaining that absolute immunity covers "any hearing before a tribunal which perform[ed] a judicial function" including "a prosecutor's conduct before a grand jury" and "a probable-cause hearing"); *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993) (noting that absolute immunity covers actions taken by a prosecutor "in his role as advocate for the State preliminary to the initiation of a prosecution and actions apart from the courtroom"). All the preliminary actions Taylor complains of have to do with Barnhill's "review of" the alleged rapes and his "decision[] to charge a violation of the law." *Sample*, 836 F.3d at 916. Those decisions are entitled to absolute immunity.[6] *See id.*

Because Taylor fails to identify any conduct by Barnhill that is not "intimately associated with the judicial phase of the criminal process," *see Burns*, 500 U.S. at 486

---

[6]Taylor also dubiously claims, without any legal support, that Barnhill "ratified" Boyce's arrest affidavit by initiating a prosecution against Swiney, and that this act is not covered by absolute immunity, presumably because drafting the arrest affidavit occurred before the initiation of the prosecution. This argument that absolute immunity protects prosecutors when they "initiate a prosecution," *see Sample*, 836 F.3d at 916, but *not* when they initiate a prosecution with an underlying warrant that turns out to be defective borders on frivolous. The seminal case on absolute immunity (which Taylor cites to repeatedly) resolves this very issue. *See Imbler*, 424 U.S. at 421-24.

(quoting *Imbler*, 424 U.S. at 430-31), the Court finds that he is entitled to absolute immunity and the claims against him in his individual capacity should also be dismissed for failure to state a claim under Rule 12(b)(6). Based on the foregoing,

IT IS ORDERED:

1. Defendants Douglas County and Nathaniel Barnhill's motion to dismiss (Filing No. 53) pursuant to Rule 12(b)(6) is granted.
2. Defendants City of Omaha and Marissa Boyce's motion to dismiss (Filing No. 49) pursuant to Rule 12(b)(6) is granted.
3. Plaintiff Shyra Taylor's individual-capacity claims against Boyce will proceed.
4. A separate judgment will issue.

Dated this 30th day of December 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge